## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABBY KATZ, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| E*TRADE FINANCIAL CORPORATION, | ) **THE FEDERAL SECURITIES LAWS** |
| RODGER A. LAWSON, KEVIN T. KABAT, | ) |
| RICHARD J. CARBONE, ROBERT | ) **JURY TRIAL DEMANDED** |
| CHERSI, JAIME W. ELLERTSON, JAMES | ) |
| P. HEALY, JAMES LAM, SHELLEY B. | ) |
| LEIBOWITZ, MICHAEL A. PIZZI, | ) |
| REBECCA SAEGER, DONNA L. WEAVER | ) |
| and JOSHUA WEINREICH, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Abby Katz ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against E*TRADE Financial Corporation ("E*TRADE" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of E*TRADE's proposed acquisition by Morgan Stanley ("Morgan Stanley"), through its wholly owned subsidiary Moon-Eagle Merger Sub Inc. (the "Proposed Transaction").

2.      On February 20, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which each E*TRADE

stockholder will receive 1.0432 shares of Morgan Stanley common stock for each share of E*TRADE common stock they own.

3.     On April 17, 2020, defendants caused to be filed a Registration Statement on Form S-4 (the "S-4") with the SEC.  The S-4 is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) E*TRADE's and Morgan Stanley's financial projections; (ii) the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Ardea Partners LP ("Ardea"); and (iii) Company insiders' potential conflicts of interest.  Accordingly, without additional information the S-4 is materially misleading in violation of federal securities laws.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  In December 2019, the Company exited its New York headquarters and consolidated related operations at its Jersey City, New Jersey location, which is located in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of E*TRADE.

9.      Defendant E*TRADE is a Delaware corporation with its principal executive offices located at 671 N. Glebe Road, Arlington, Virginia 22203.  E*TRADE's common stock trades on the NASDAQ Global Select Market under the ticker symbol "ETFC."

10.      Defendant Rodger A. Lawson has served as Chairman of the Board since May 2013 and a director of the Company since February 2012.

11.      Defendant Kevin T. Kabat has served as a director of the Company since June 2016.

12.      Defendant Richard J. Carbone has served as a director of the Company since August 2013.

13.      Defendant Robert Chersi has served as a director of the Company since January 2019.

14.      Defendant Jaime W. Ellertson has served as a director of the Company since May 2019.

15.      Defendant James P. Healy has served as a director of the Company since January 2015.

16.    Defendant James Lam has served as a director of the Company since November 2012.

17.    Defendant Shelley B. Leibowitz has served as a director of the Company since May 2013.

18.    Defendant Michael A. Pizzi has served as Chief Executive Officer ("CEO") and a director of the Company since August 2019.

19.    Defendant Rebecca Saeger has served as a director of the Company since February 2012.

20.    Defendant Donna L. Weaver has served as a director of the Company since April 2003.

21.    Defendant Joshua Weinreich has served as a director of the Company since 2018.

22.    Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

23.    Relevant non-party Morgan Stanley is a Delaware corporation with its principal executive offices located at 1585 Broadway, New York, New York 10036. Morgan Stanley's common stock trades on the New York Stock Exchange under the ticker symbol "MS."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and Proposed Transaction**

24.    E*TRADE provides financial services including brokerage and banking products and services to traders, investors, stock plan administrators and participants, and registered investment advisers ("RIAs").

25.    E*TRADE provides these services through its digital platforms and network of industry-licensed customer service representatives and financial consultants, over the phone, by email and online via two national financial centers, and in-person at 30 regional financial centers

across the United States.  The Company also operates federally chartered savings banks with the primary purpose of maximizing the value of deposits generated through its brokerage business.

26.     On January 23, 2020, the Company announced its fourth quarter and full year 2019 financial results  including fourth quarter net income of $172 million, diluted earnings per common share of $0.76, and total net revenue of $679 million.  For the full year, the Company reported net income of $955 million, diluted earnings per common share of $3.85, and a Company record $2.9 billion in net revenue.  Defendant Pizzi commented on the results, stating:

> This was another year marked by solid results, remarkable customer engagement, and significant achievements amid a dynamic and evolving operating environment. We enhanced our award-winning retail platform and #1-rated Corporate Services solution, expanded our Advisor Services offering, and generated our best year ever for customer trading, growth in customer cash, and stock plan implementations. We balanced robust underlying growth with our strongest year ever of capital return to shareholders. As we turn our focus to 2020 and a transformed industry landscape, we will continue to stand out from the crowd through the quality of our digital and customer service experience—areas where E*TRADE truly shines. We will continue to be unyielding in our commitment to delivering for our customers and shareholders, as we solidify E*TRADE as the premiere destination and platform of choice for the digitally inclined investor and trader.

27.     On February 20, 2020, E*TRADE announced the Proposed Transaction, stating, in relevant part:

> NEW YORK & ARLINGTON, Va.--(BUSINESS WIRE)--Morgan Stanley (NYSE: MS) and E*TRADE Financial Corporation (NASDAQ: ETFC) have entered into a definitive agreement under which Morgan Stanley will acquire E*TRADE, a leading financial services company and pioneer in the online brokerage industry, in an all-stock transaction valued at approximately $13 billion. Under the terms of the agreement, E*TRADE stockholders will receive 1.0432 Morgan Stanley shares for each E*TRADE share, which represents per share consideration of $58.74 based on the closing price of Morgan Stanley common stock on February 19, 2020.
>
> The combination will significantly increase the scale and breadth of Morgan Stanley's Wealth Management franchise, and positions Morgan Stanley to be an industry leader in Wealth Management across all channels and wealth segments. E*TRADE has over 5.2 million client accounts with over $360 billion of retail client assets, adding to Morgan Stanley's existing 3 million client relationships and

$2.7 trillion of client assets. Morgan Stanley's full-service, advisor-driven model coupled with E*TRADE's direct-to-consumer and digital capabilities, will allow the combined business to have best-in-class product and service offerings to support the full spectrum of wealth.

"E*TRADE represents an extraordinary growth opportunity for our Wealth Management business and a leap forward in our Wealth Management strategy. The combination adds an iconic brand in the direct-to-consumer channel to our leading advisor-driven model, while also creating a premier Workplace Wealth provider for corporations and their employees. E*TRADE's products, innovation in technology, and established brand will help position Morgan Stanley as a top player across all three channels: Financial Advisory, Self-Directed, and Workplace," said James Gorman, Chairman and CEO of Morgan Stanley. "In addition, this continues the decade-long transition of our Firm to a more balance sheet light business mix, emphasizing more durable sources of revenue."

"Finally, I am delighted that Mike Pizzi, CEO of E*TRADE, will be joining Morgan Stanley. Mike will continue to run the E*TRADE business within the Morgan Stanley franchise and lead the ongoing integration effort. Mike will report to me and will join the Morgan Stanley Operating and Management Committees. In addition, we will invite one of E*TRADE's independent directors to join our Board. We look forward to welcoming the infusion of management and technology talent that E*TRADE will bring to Morgan Stanley."

"Since we created the digital brokerage category nearly 40 years ago, E*TRADE has consistently disrupted the status quo and delivered cutting-edge tools and services to investors, traders, and stock plan administrators," said Mike Pizzi, Chief Executive Officer of E*TRADE. "By joining Morgan Stanley, we will be able to take our combined offering to the next level and deliver an even more comprehensive suite of wealth management capabilities. Bringing E*TRADE's brand and offerings under the Morgan Stanley umbrella creates a truly exciting wealth management value proposition and enables our collective team to serve a far wider spectrum of clients."

The transaction will create a leading player in Workplace Wealth, combining E*TRADE's leading U.S. stock plan business with Shareworks by Morgan Stanley, a top provider of public stock plan administration and private cap table management solutions. This combination will enable Morgan Stanley to accelerate initiatives aimed at enhancing the workplace offering through online brokerage and digital banking capabilities, providing a significantly enhanced client experience.

E*TRADE has been a pioneer in the digital brokerage and banking space for nearly 40 years and is an iconic brand. E*TRADE's hallmarked, consumer-facing technology platforms will complement Morgan Stanley's leading advisor-facing technology. E*TRADE also provides a full suite of digital banking services, including direct integration with brokerage accounts, checking and high-yield

savings accounts, significantly accelerating Morgan Stanley's digital banking efforts. The transaction adds approximately $56 billion of low-cost deposits, which will provide significant funding benefits to Morgan Stanley.

Importantly, the acquisition marks a continuation of Morgan Stanley's decade-long effort to rebalance the Firm's portfolio of businesses so that a greater percentage of Firm revenues and income are derived from balance sheet light and more durable sources of revenues. Upon integration, the combined Wealth and Investment Management businesses will contribute approximately 57% of the Firm's pre-tax profits, excluding potential synergies, compared to only approximately 26% in 2010.

The transaction provides significant upside potential for shareholders of both Morgan Stanley and E*TRADE. Shareholders from both companies will benefit from potential cost savings estimated at approximately $400 million from maximizing efficiencies of technology infrastructure, optimizing shared corporate services and combining the bank entities, as well as potential funding synergies of approximately $150 million from optimizing E*TRADE's approximate $56 billion of deposits. In addition, Morgan Stanley will have enhanced technology and service capabilities to capture a larger portion of the estimated approximate $7.3 trillion of combined current customer assets held away, which will drive significant revenue opportunities.

Morgan Stanley will be better positioned to generate attractive financial returns through increased scale, improved efficiency, higher margins, stronger returns on tangible common equity, and long-term earnings accretion. Morgan Stanley expects the acquisition to be accretive once fully phased-in estimated cost and funding synergies are realized. Morgan Stanley will maintain its strong capital position, with the Firm's common equity tier 1 ratio estimated to increase by over 30bps at closing. The transaction is expected to increase the Firm's return on tangible common equity by more than 100bps with fully phased-in cost and funding synergies and improve Wealth Management's pre-tax profit margin to over 30%.

**The S-4 Materially Misleads E*TRADE Stockholders by Omitting Material Information**

28.     On April 17, 2020, defendants filed the materially misleading and incomplete S-4 with the SEC.  Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information concerning: (i) E*TRADE's and Morgan Stanley's financial projections; (ii) the financial valuation analyses performed by the Company's financial advisors, J.P. Morgan and Ardea; and (iii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning E\*TRADE's and Morgan Stanley's Financial Projections***

29.     The S-4 omits material information regarding Company management's and Morgan Stanley's financial projections.

30.     For example, the S-4 fails to disclose: (i) the annual cash amounts estimated to be distributed to E\*TRADE stockholders in the form of dividends and share repurchases over the period beginning December 31, 2019 through December 31, 2029; (ii) E\*TRADE's annual amount of additional capital distributions (or minus the additional capital requirements) required to achieve a Tier 1 Leverage Ratio target of 6.75% at the end of each year over the period beginning December 31, 2019 through December 31, 2029; (iii) E\*TRADE's tangible book value over the projection period; (iv) the cash amounts estimated to be distributed to Morgan Stanley stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (v) the implied amount of the additional cash distributions Morgan Stanley would make to its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6%; (vi) Morgan Stanley's tangible book value per share over the projection period; and (vii) Morgan Stanley's estimated earnings per share ("EPS") over the projection period.

31.     If a registration statement discloses financial projections and valuation information, such projections must be complete and accurate.

32.     The omission of this information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Certain E\*TRADE Unaudited Prospective Financial Information."

***Material Omissions Concerning J.P. Morgan's and Ardea's Financial Analyses***

33.     The S-4 describes J.P. Morgan's and Ardea's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of J.P.

Morgan's and Ardea's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, E*TRADE's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Ardea's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

34.     With respect to J.P. Morgan's *Public Trading Multiples Analysis – E*TRADE Standalone*, the S-4 fails to disclose the individual multiples and financial metrics analyzed by J.P. Morgan.

35.     With respect to J.P. Morgan's *Dividend Discount Analysis – E*TRADE Standalone*, the S-4 fails to disclose: (i) the cash amounts estimated to be distributed to E*TRADE stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (ii) the implied amount of the additional cash distributions E*TRADE would make to its stockholders during each year 2020 through 2029 to achieve a Tier 1 Leverage Ratio of 6.75%; (iii) the terminal values of E*TRADE; and (iv) the individual  inputs and assumptions underlying the discount rates ranging from 11.0% to 12.0%.

36.     With respect to J.P. Morgan's *Public Trading Multiples Analysis – Morgan Stanley Standalone*, the S-4 fails to disclose Morgan Stanley's EPS for calendar years 2020 and 2021.

37.     With respect to J.P. Morgan's *Dividend Discount Analysis – Morgan Stanley Standalone*, the S-4 fails to disclose: (i) the cash amounts estimated to be distributed to Morgan Stanley stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (ii) the implied amount of the additional cash distributions Morgan Stanley would make to its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6%; (iii) the terminal values of Morgan Stanley; and (iv) the individual inputs and assumptions

underlying the discount rates ranging from 10.25% to 11.25%.

38.     With respect to Ardea's *Dividend Discount Analyses for E\*TRADE*, the S-4 fails to disclose: (i) the annual cash amounts estimated to be distributed to E\*TRADE stockholders in the form of dividends and share repurchases over the period beginning December 31, 2019 through December 31, 2029; (ii) the annual amount of additional capital distributions (or minus the additional capital requirements) required to achieve a Tier 1 Leverage Ratio target of 6.75% at the end of each year over the period beginning December 31, 2019 through December 31, 2029; (iii) the estimate of E\*TRADE's terminal year cash distributions; (iv) the terminal values of E\*TRADE; and (v) the individual inputs and assumptions underlying the discount rates ranging from 11.00% to 13.00%.

39.     The omission of this information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "Certain E\*TRADE Unaudited Prospective Financial Information" and "Opinion of E\*TRADE's Financial Advisors."

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

40.     The S-4 fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

41.     For example, Morgan Stanley's Chairman and CEO, James Gorman, in the February 20, 2020 joint press release announcing the Proposed Transaction, stated:

> I am delighted that Mike Pizzi, CEO of E\*TRADE, will be joining Morgan Stanley. Mike will continue to run the E\*TRADE business within the Morgan Stanley franchise and lead the ongoing integration effort. Mike will report to me and will join the Morgan Stanley Operating and Management Committees. In addition, we will invite one of E\*TRADE's independent directors to join our Board. We look forward to welcoming the infusion of management and technology talent that E\*TRADE will bring to Morgan Stanley.

The S-4 fails, however, to disclose the specific details of all employment and retention-related

discussions and negotiations that occurred between Morgan Stanley and E*TRADE executive officers and directors, including who participated in all such communications, when they occurred and their content.  The S-4 further fails to disclose whether Morgan Stanley's proposals mentioned management retention or equity participation in the combined company.

42.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The omission of this information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "Background of the Merger" and "Interests of E*TRADE's Directors and Executive Officers in the Merger."

44.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

#### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

45.     Plaintiff repeats all previous allegations as if set forth in full.

46.     During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47.     By virtue of their positions within the Company, the defendants were aware of this

information and of their duty to disclose this information in the S-4.  The S-4 was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's and Morgan Stanley's financial projections, the financial valuation analyses performed by J.P. Morgan and Ardea, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.     Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of E*TRADE within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of E*TRADE, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the S-4.

55.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, E*TRADE's stockholders

will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of E*TRADE, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to disseminate a S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  May 21, 2020

WEISSLAW LLP

By   *s/ Mark. D. Smilow*
Mark. D. Smilow
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond (to be admitted
*pro hac vice*)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*